[No 3573.]

BUSH ET AL. v. HADDEN ET AL.

FACT CASE.
The decree in this case is affirmed upon the evidence.

*Appeal from the District Court of Larimer County.*

Mr. EDWARD D. UPHAM and Messrs. TALBOT & DENISON, for appellants.

Mr. FRANK J. ANNIS, for appellees.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

In July, 1886, James F. Bush, one of the appellants, entered into a copartnership agreement with Henry Hadden, one of the appellees, for buying and selling horses and cattle and real estate in Larimer county, Colorado. The capital was $10,000, of which, according to the written agreement, $5,000 was to be contributed in land on the Canadian river, then owned by James F. Bush and his wife, and $5,000 in cattle then owned by Henry Hadden. Hadden at the execution of the contract contributed his share; and in October, 1886, there was deeded to the copartnership firm of

Hadden & Bush the lands which are the subject of controversy in this suit, title to which was in the name of Lizzie A. Bush, one of the appellants and wife of James F. Bush, and said conveyance was made by her.

The present action was begun by Mrs. Bush against Henry Hadden and Thomas H. Hadden, as trustee, and its object was to release the lands in question from the burden of an equitable lien resting upon them, which was created as will be hereinafter stated. The complaint, after averring the agreement for this copartnership, alleges that the plaintiff Mrs. Bush conveyed these lands to the firm to assist her husband in forming the same, and to indemnify Hadden for advances of property to be made to the copartnership, and upon the understanding between the three that the lands were to be reconveyed to her free from all incumbrance after Hadden should be indemnified, and that, without any other consideration, she made such conveyance.

It is then alleged that for the purpose of securing and indemnifying Hadden for advances of property made by him to the partnership, Bush and Hadden, as partners, in October, 1886, executed their joint promissory note for $5,000 payable to Hadden seven years after date, and to secure the same gave their trust deed embracing this land to Thomas H. Hadden, as trustee.

Following this is an allegation that on the first of May, 1887, by mutual consent, the partnership was dissolved, and a full settlement between the partners had, in which Hadden was indemnified for all advances made by him to the firm; that the $5,000 note was paid, canceled and destroyed by Hadden, and that he then agreed to procure a release of the trust deed, and that it was agreed that Mrs. Bush's lands, and also other lands acquired by the copartnership, should be conveyed to her by the partnership firm free from all incumbrance.

It is further alleged that, pursuant to such agreement, Hadden, pretending to carry out its terms, after receiving a quitclaim deed therefor, from James F. Bush, made his spe-

cial warranty deed to Mrs. Bush for the lands theretofore conveyed by her, which deed he (Hadden) caused to be recorded, and thereafter sent to her, and which, in due course of mail, she received; that the said deed, contrary to said agreement, contained a clause or stipulation making said lands subject to the lien of the indebtedness represented by the $5,000 note and the trust deed above referred to, of which stipulation plaintiff claims she remained in ignorance until some time in 1894 shortly before this action was instituted.

Hadden filed his answer admitting the copartnership agreement as alleged, the execution of the trust deed, the dissolution of the copartnership, and the execution of the special warranty deed to the plaintiff. The answer denies that the land was conveyed to the copartnership as an indemnity for any advances made, or to be made, by him to the firm, or for any purpose other than the single one of enabling James F. Bush to comply with his agreement of copartnership; and alleges that it was so conveyed and received solely as his (Bush's) contribution of capital or assets.

The answer then states that at the dissolution of the firm a settlement of all accounts was made as though no partnership had existed, and that Bush then assumed as his own liability the payment of the whole of the $5,000 note; that said note was not then paid, canceled or destroyed; and that the further agreement was made (and carried out) that Bush should quitclaim his interest in the lands in controversy to Hadden, and that the latter should deed the same to Mrs. Bush, subject to said lien; and that plaintiff knowingly accepted said deed constituting, or, rather, continuing, the lien, and subsequently recognized and acquiesced in such agreement.

A cross-complaint is set up in the answer in which Hadden asks to have James F. Bush made a party, and also asks that a misdescription of some of the property included in the trust deed be corrected, and that a decree be entered ordering the trustee to sell the lands to satisfy the indebtedness thereby secured.

An order of court was entered making James F. Bush a party, whereupon he appeared and filed his answer; and after the issues were made up there was a trial to the court without a jury, which made specific findings in favor of the defendant Hadden, and dismissed the plaintiff's complaint; and upon the cross-complaint gave judgment upon the note against James F. Bush in favor of Henry Hadden, and ordered the defendant trustee Thomas H. Hadden to proceed to foreclose the trust deed to satisfy said note. From this degree both Mrs. Bush and her husband have appealed to this court.

If we look only to the complaint it is not altogether certain for what particular advances by Hadden plaintiff claims she made this conveyance as an indemnity. It might be that it was for advances of money and property other than his original contribution of $5,000 to the capital; but if we look to the evidence of Mrs. Bush herself we find she testifies that she conveyed the lands as an indemnity for Hadden's original contribution of capital. It is true that she also says that the land was put in to form her husband's share of the capital, but she immediately follows this with a statement that it was an indemnity to Hadden for the latter's equal share of the capital. She further testifies, as her understanding, that the trust deed was not given as security for money borrowed by the firm to run the business, but to secure Hadden against business losses, mismanagement and misfortune that might happen.

Of the voluminous evidence some relates to copartnership accounts and transactions both before and after the dissolution, some to dealings between Mrs. Bush and her husband, some to dealings between Mrs. Bush and Hadden, and some to individual transactions between Hadden and Mr. Bush. As might be supposed, considerable confusion results from such a method of trying the case. In view, however, of the special findings made by the court, we are not seriously embarrassed by this state of affairs, and do not find it necessary for the purpose of ascertaining where its weight lies to review this evidence in detail; for, under the general rule of

this court, so often announced, if there is legal evidence sufficient to justify the findings and decree, it will not be reversed merely because this court upon the facts might have arrived at a different conclusion. Counsel for appellants recognize the force of this, and upon oral argument went so far as to say that if the record afforded any evidence in support of the findings below, they should not be disturbed.

The specific findings made by the trial court are, in substance, as follows : *First*, that Bush and Hadden formed this copartnership with a capital of $10,000, of which Hadden contributed $5,000 in cattle, and Bush, by his wife's assistance, the lands in question valued at $5,000 ; *second*, that upon the day Mrs. Bush executed her conveyance to the two partners, they, in turn, conveyed the lands in controversy to Thomas H. Hadden, as trustee, to secure the payment of a note of $5,000 signed by Bush and Hadden, and payable to Henry Hadden in seven years, and that the consideration for said note was property already advanced, and money thereafter to be advanced, by Henry Hadden for the use of said firm ; *third*, that upon the dissolution of the firm in June, 1887, a full and complete settlement of said copartnership business was had, in and by which settlement the said indebtedness represented by the $5,000 note and secured by the trust deed was assumed by Bush, and it was further agreed that the land covered thereby should remain as security until said incumbrance was paid and satisfied ; and it was agreed that Bush should, and he thereupon did, quit-claim his interest therein to Hadden, and the latter should, and thereupon did, convey to Mrs. Bush, subject to the lien mentioned, the property in controversy, and that other property of the copartnership, both real and personal, which was acquired by the firm, was also conveyed to Mrs. Bush ; that the deed reconveying to Mrs. Bush the lands by her conveyed to the firm was accepted and recorded by her subject to the lien. There was also a finding that Hadden paid taxes upon this land after the conveyance to Mrs. Bush was made, and redeemed the same from tax sales.

It is with respect to the findings that the plaintiff conveyed the lands to the firm as the contribution of James F. Bush to the capital of the copartnership, and that plaintiff accepted and acquiesced in the special warranty deed continuing the lien in question, and to the refusal of the court to find that her purpose in making the original conveyance was to furnish and give an indemnity to Hadden for his contribution of capital, that the appellants particularly complain.

We have gone through this record with much care, and are satisfied that the findings are amply supported by it. Our examination of this evidence had led us to conclude that this controversy has arisen, not because of any overreaching or dishonesty upon the part of Henry Hadden, or because of any intentional wrongdoing upon the part of Mrs. Bush. She appears to be a woman of intelligence and culture, but not of much knowledge of business affairs. Obviously, though both she and her husband seem not now so to regard it, she entrusted much of her business affairs to her husband, and if she has been wronged, it is due to him, and not to Henry Hadden.

In support of her case, Mrs. Bush was unable to testify to any definite material facts, or to any definite statements or conduct by Hadden giving color to her charges. The most she was able to do was to give her conclusions, or the understanding, which she got from portions of conversations overheard by her between Bush and Hadden before the agreement of copartnership was entered into; and it is apparent that the understanding to which she testifies that this land was to be held as an indemnity for Hadden's advances, was derived, if not wholly, certainly in great part, from what her husband told her. It is true that her husband testifies that there was such an understanding, but both he and she admit that Hadden never asked or suggested such an arrangement, and Mr. Bush testifies that the conveyance was so made by his wife as a voluntary matter upon his own suggestion. Upon the other hand, Hadden testifies that

there never was such an understanding or agreement, and further testifies (as the court below found) that the conveyance of these lands was intended by Mrs. Bush, and so received by the copartnership, as James F. Bush's contribution to the capital of the firm, the consideration being her desire to assist her husband, and certain benefits to herself which she anticipated from the joint business. If the lands were so transferred and contributed, they became a part of the firm assets with which the firm could deal the same as with any other of its property.

It also appears, and the court must have so found, that during the copartnership Hadden made advances to the firm, in addition to his contribution of original capital, of money and property amounting to more than $5,000—for which the trust deed operated as a security—which sum was due and owing to him by the firm at the time of its dissolution. Aside from this, if we consider the situation of the parties when this copartnership agreement was signed—which was witnessed by the plaintiff herself—it is highly improbable that the conveyance of the land was intended by any of them as an indemnity, and certainly it was not so regarded by Hadden. When the conveyance was made he had already contributed $5,000 in capital. If these lands were conveyed to the firm, and so received by Hadden, merely as an indemnity or extra guaranty, as Bush expresses it, for Hadden's share of the capital theretofore contributed, or even for advances which he might thereafter make, and Hadden should, as he actually did, advance property or money in addition to his original capital amounting to more than $5,000, we would have this condition of affairs, viz : a copartnership between Bush and Hadden, in which Bush had an equal interest, the entire capital of which was contributed by Hadden. In other words, Bush would be an equal partner without contributing anything to the capital. The improbability that any such arrangement was made, taken in connection with the positive testimony against it which the record discloses, is an ample justification for the finding of the trial court that no such

arrangement was, in fact, ever entered into. The court was justified from the evidence in finding that the lands were put in by Mrs. Bush as her husband's contribution to the capital of the firm as against Hadden's $5,000 in cattle, and that thereafter, for the purpose of acquiring other property and paying the running expenses, Hadden advanced to the firm the $5,000 represented by this note and secured by this trust deed, and that upon the dissolution of the firm the land was properly charged with the payment of this indebtedness, and that Mrs. Bush took the conveyance subject thereto.

The appellants' contention (even if the point is important) that there is no evidence that Mrs. Bush knowingly accepted or received this special warranty deed, is not tenable. It is true she testifies that she did not know of the stipulation in question until a short time before she brought this suit in the year 1894, but there are circumstances in the record that warranted the trial court in finding that she did. Soon after the deed was recorded it was sent to, and received by, her. She testifies that she did not read it, and as an excuse for not doing so says that she had confidence that Mr. Hadden would not do anything wrong; but if she had read it (as it was her duty to do) she would have become aware that her land was subject to the lien.

After she received this deed, interest upon this note for some time thereafter was paid by Bush, and Hadden testifies that some time during the year 1892, and at different times therein, he had conversations with Mrs. Bush concerning this lien in which he informed her that the interest was due and payable, and that he would have to proceed to a foreclosure unless payment was made, and she referred him to Mr. Bush (her husband) who looked after such matters for her. Then, too, in May, 1889, Mrs. Bush and her husband borrowed money of the Lombard Investment Company and gave their joint note therefor, and a trust deed upon this same property was executed as security. It is reasonable to suppose that this loan would not have been made, had not the title of the property been examined and an abstract thereof furnished to

the lender, and that at that time, at least, Mrs. Bush must have known that her land was not free from all incumbrance.

From these and other circumstances that might be mentioned it seems to us clear that Mrs. Bush must have known of this lien at, or soon after, the time she received the deed, and the court's finding to that effect is supported by the evidence.

As we have said, the contention is now made that Bush was not the agent of his wife, and while we do not think it is material, yet, if so, it is apparent that, throughout these transactions, Bush was acting as his wife's representative, and that she must have known of it, and that Hadden was justified in acting as he did upon the supposition that Bush was her agent. That he knew of this clause in the deed is abundantly shown. It is also true that while upon the witness stand he testified in support of his wife's claim, yet much, if not all, of his testimony that is at all material, is so inconsistent and contradicted by his letters, by documentary evidence, and by other witnesses in the case that his testimony is entitled to little, if any, credence. Without so deciding, we have thus far proceeded as though the class of evidence produced by the plaintiff was competent in this character of action. We do not find it necessary to a determination of this controversy to pass upon the point made by defendants that parol testimony is improper under the issues as framed. This is a case where the plaintiff is contradicted upon every material matter by evidence, both written and oral, sufficient to uphold the findings of the trial court. If, for a valuable consideration, this conveyance was, as a matter of fact, made by Mrs. Bush as her husband's contribution towards the partnership funds—which was the finding below —the lands included in the conveyance were certainly subject to the disposition made of them by the copartnership, and are subject to the lien created by this special warranty deed. The plaintiff, it is true, claims that the conveyance was made as an indemnity to Hadden for his contribution of capital, and that he has been indemnified. This is positively

and specifically denied; and if the conveyance was not so made, or if Hadden was not so indemnified, both of which the court found against the plaintiff, her entire case falls. Considering the entire record, we conclude that the judgment must be affirmed, and it is so ordered.

*Affirmed.*